IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| READY TRANSPORT, INC., a Texas corporation; AVAILABLE SHIPPERS, INC., a Texas corporation; PREFERRED SHIPPERS, INC., a Nevada corporation; PROMPT SHIPPERS, INC., a Texas corporation; and QUICK TRANSPORTATION, INC., a Nevada corporation,<br><br>   Plaintiffs,<br><br>   v.<br><br>AAR MANUFACTURING, INC., a California corporation; and AAR MOBILITY SYSTEMS, a corporation of unknown citizenship,<br><br>   Defendants. | 2:06-cv-1053-GEB-KJM<br><br>ORDER* |

On April 21, 2008, Plaintiffs moved for an award of attorneys' fees under California Code of Civil Procedure section 1021.5 ("§ 1021.5"). (Mot. at 2:17-22, Dkt. No. 84.) Defendants oppose the motion. For the following reasons, Plaintiffs' motion for attorneys' fees is denied.

---

   *   This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

BACKGROUND

Plaintiffs are related companies that operate as interstate shipping carriers (Compl. ¶¶ 1-6.) Defendant AAR Manufacturing, Inc. ("AAR") owns Defendant AAR Mobility Systems and together they design and manufacture shipping containers, primarily for the Department of Defense. (Id. ¶¶ 7, 9.) From about 1995 through 2003, Plaintiff Ready Transportation was offered and accepted numerous shipping contracts by Defendants. (Id. ¶ 18.) These contracts were awarded through the Voluntary Tender system, whereby government shippers are provided a list of "approved" carriers, ranked by price, and the shippers must select carriers according to Defense Transportation Regulations, which require offers be made to the lowest-priced carriers first. (Id. ¶ 16.)

In 2003, Defendants began dramatically reducing the number of shipping contracts they offered to Plaintiff Ready Transportation. (Id. ¶ 18.) On May 12, 2008, Plaintiffs filed a complaint against Defendants containing claims for intentional interference with contractual relations, intentional interference with prospective economic advantage, unlawful business practice under California Business and Professions Code section 17200, damages and injunctive relief.[1] (Id. at 11:2-4, 12:1-4, 13:7-10, 14:9-18.) Plaintiffs alleged that Defendants bypassed Plaintiffs' lowest price bids (thereby unofficially cancelling their "approved status") and offered

---

[1] Plaintiffs' claims against Defendants were also alleged against an employee of AAR Manufacturing. In addition, Plaintiffs alleged a claim against the Department of Defense and the Defense Contract Management Agency seeking to enjoin the government to enforce Voluntary Tender regulations. (Compl. at 9:21-27, 11:2-13:20.) However, these three defendants were dismissed. (Order, July 28, 2006; Order, Aug. 20, 2007.)

2

shipping contracts to higher priced carriers in violation of the voluntary tender regulations.  (See, e.g., id. ¶ 21.)  Plaintiffs further alleged that Defendants "blackballed" Plaintiffs, telling the higher priced carriers that were awarded shipping contracts that they should not subcontract with Plaintiffs to move the freight.  (See, e.g., id. ¶ 20.)

On February 20, 2008, the parties filed a Notice of Settlement.  (Dkt. No. 78.)

> The settlement requires, among other things, that [Plaintiffs] would be returned to "approved status" for government shipments originating at AAR and that [Plaintiffs] would henceforth be treated fairly in regard to both FOB Origin and FOB Destination shipments.  The settlement also entails a monetary payment to [Plaintiffs].

(Mot. at 12:27-13:4.)  Their settlement included the parties' agreement to dismiss the action with prejudice under Federal Rule of Civil Procedure 41(a)(2), which was filed on February 26, 2008.  (Order, Feb. 26, 2008.)  In that stipulated dismissal order, the Court retained jurisdiction "solely for the purpose of hearing and ruling upon Plaintiffs' application re legal entitlement to attorney's fees . . . ."  (Id. at 3:7-11.)

## ANALYSIS

Plaintiffs seek an award of attorneys' fees "under California Code of Civil Procedure § 1021.5 on the basis that this lawsuit has resulted in the enforcement of an important right affecting the public interest and a significant pecuniary benefit has been conferred on the general public."[2]  (Mot. at 2:17-20.)

---

[2]     The parties stipulated to $180,000 as the amount of attorneys' fees.  "Thus, the only issue before the Court is whether [Plaintiffs are] legally entitled to fees in any amount under § 1021.5." (Mot. at
(continued...)

3

California Code of Civil Procedure section 1021.5 prescribes:

> [A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Proc. Code § 1021.5.  "Section 1021.5 codifies the 'private attorney general doctrine' . . . ."  Ryan v. Cal. Interscholastic Fed'n, 94 Cal. App. 4th 1033, 1044 (2001).

> The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right.  To encourage such suits, attorneys fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action.  Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest.

Beach Colony II v. Cal. Coastal Comm'n, 166 Cal. App. 3d 106, 114 (1985) (citing Save El Toro Ass'n v. Days, 98 Cal. App. 3d 544, 552 (1979); Woodland Hills Residents Ass'n, Inc. v. City Council, 23 Cal. 3d 917, 933 (1979); County of Inyo v. City of L.A., 78 Cal. App. 3d 82, 90 (1978)).

---

[2](...continued)
2:20-22.)

1          Defendants do not challenge Plaintiffs' argument that a
2 significant benefit, saving taxpayer dollars, has been conferred on
3 the general public as a result of this action.  (Mot. at 15:1-2.)
4 However, it is disputed whether "the necessity and financial burden of
5 private enforcement . . . are such as to make the award appropriate."
6 Cal. Civ. Proc. Code § 1021.5.  Plaintiffs argue an award of
7 attorneys' fees is appropriate because

> [t]he primary thrust of the action was the attempt by the Ready Parties to enjoin the uncompetitive practices employed by AAR in awarding government freight contracts.  Also in this action, the Ready Companies sought damages related to AAR's interference with its ability to move freight pursuant to subcontracts to it by the carriers who were successful in obtaining awards. . . . The Ready Companies only sought [$75,459.12] in lost profits from subcontracting opportunities . . . . These claims did not provide the incentive to expend the $180,000 in attorneys' fees that the parties have stipulated to.

15 (Mot. at 16:19-17:2.)
16          Defendants counter "Plaintiffs have always pursued this
17 lawsuit with respect to their own narrow interests.  The primary
18 thrust of Plaintiffs' lawsuit was an attempt to receive millions of
19 dollars in alleged actual damages against Defendants plus millions
20 more in additional punitive damages."  (Opp'n at 31:11-26 (emphasis
21 omitted) (noting Plaintiffs' request to amend the Complaint to
22 "clarify" that they were seeking over $4 million in monetary
23 damages).)  Defendants further argue the parties' settlement agreement
24 shows that "Plaintiffs viewed this lawsuit as advancing their private
25 interest as opposed to the public interest" because "[t]hat agreement
26 is completely silent on whether Defendants must follow the Voluntary
27 Tender Procedure or any applicable government regulations with respect
28 to the general public.  Rather, that agreement requires only that . .

. the AAR Defendants place Plaintiffs on their list of 'approved' carries." (Opp'n at 32:14-20.) Plaintiffs rejoin that their Complaint only sought modest damages for the loss of subcontracting opportunities, and that the court rejected Plaintiffs' proposed amendment to seek damages for Defendants' practice of passing over Plaintiffs when awarding contracts, therefore, "[f]rom its inception through the time of settlement, the action has been an action for injunctive relief under the [California Unfair Competition Law]." (Reply at 29:19-30:7.)

"As to the necessity and financial burden of private enforcement, an award is appropriate where the cost of the legal victory transcends the claimant's personal interest; in other words, where the burden of pursing the litigation is out of proportion to the plaintiff's individual stake in the matter." Ryan, 94 Cal. App. 4th at 1044 (citing Olney v. Mun. Ct., 133 Cal. App. 3d 455, 463-64 (1982). "A pecuniary interest in the outcome of the litigation is not disqualifying," however, "[t]he private financial burden test . . . mandates a comparison between the estimated value of the plaintiff's individual stake in the action (which may be nonpecuniary) and the cost of the litigation." Lyons v. Chinese Hosp. Ass'n, 136 Cal. App. 4th 1331, 1352, 1354 (2006). "'In comparing the cost of litigation to the plaintiff's stake in the matter, [courts] do not look at the plaintiffs' *actual* recovery . . ., but instead . . . consider the *estimated value* of the case to the time the vital litigation decisions were being made . . . .'" Id. at 1352 (quoting Beasley v. Wells Fargo Bank, 235 Cal. App. 3d 1407, 1414 (1991)) (internal quotations omitted). A fee award will be denied where "the plaintiff's personal stake in the outcome was not disproportionate to the burden of private

1  enforcement, even where the litigation enforced an important right and
2  conferred a significant benefit upon the public." Satrap v. Pac. Gas
3  & Elec. Co., 42 Cal. App. 4th 72, 78 (1996).  This is because
4  "[s]ection 1021.5's policy of encouraging public interest lawsuits is
5  not promoted by awarding fees to persons having strong personal
6  economic interests in litigating matters." Beach Colony II, 166 Cal.
7  App. 3d at 115.
8         Plaintiffs filed their Complaint seeking an injunction
9  against the government to ensure Defendants comply with regulations
10 regarding voluntary tender awards and an injunction against Defendants
11 to prevent further unfair and unlawful business acts, including the
12 practice of blackballing Plaintiffs.  (Compl. at 13:21-14:18.)
13 Plaintiffs' allegations made clear that Defendants' failure to follow
14 applicable regulations resulted in a sharp decline in the amount of
15 shipping contracts awarded to Plaintiffs, and Defendants' practice of
16 "blackballing" Plaintiffs prevented them from receiving shipping
17 subcontracts.  (Compl. ¶¶ 16, 18, 20.)  Plaintiffs sought $75,459.12
18 in lost subcontracting damages.  Plaintiffs also unsuccessfully moved
19 to amend their Complaint so they could seek over $4 million in lost
20 revenues during the period when Plaintiffs' lower-cost bids were
21 passed over in favor of higher-priced carriers from 2001 to October
22 2006.  (Mot. at 17:3-10; Order, Aug. 20, 2007.)
23        While Plaintiffs chose to pursue the litigation after their
24 motion to amend was denied, their proposed amendment demonstrates
25 that, in addition to their claims for damages, the *injunctions* had a
26 significant economic value to Plaintiffs because by requiring
27 Defendants to follow applicable regulations in awarding contracts,
28 Plaintiffs would again be able to make millions in profits in a few

1 years by receiving shipping contracts and subcontracts.[3] Plaintiffs'
2 argument implies they had no individual stake in seeking the
3 injunctions and ignores "the commercial economic gain [they]
4 anticipate[] from" the injunctions requiring Defendants to end their
5 practice of blackballing Plaintiffs and to award contracts based on
6 lowest priced bids. Beach Colony II, 166 Cal. App. 3d at 113, 114
7 (holding plaintiff's "financial stake in the outcome of its litigation
8 was substantial" where its victory made it "commercially feasible to
9 build" housing units and save $300,000 in expenses.) Accordingly, the
10 record demonstrates that Plaintiffs' estimated individual stake in the
11 litigation far exceeded the $180,000 in fees they seek.

12 Moreover, the record demonstrates that Plaintiffs' primary
13 goal in this action was to again be awarded contracts when they are
14 the lowest-cost carrier and to cease being blackballed from
15 subcontracts. Any public benefit from the lawsuit was wholly
16 coincidental to those business goals. See id. at 114 ("Development is
17 [plaintiff's] business and . . . [t]he public benefit from the lawsuit
18 was wholly coincidental to [plaintiff's] personal profit-making
19 goals."); see also Bell v. Vista Unified Sch. Dist., 82 Cal. App. 4th
20 672, 691 (2000) (holding where plaintiff high school football coach
21 was removed from position in procedures that violated state law, even
22 if his suit conferred a significant benefit on the public by ensuring
23 public access to meetings, plaintiff's "litigation goal was always to
24 obtain reinstatement and compensatory damages" and the state law

---

[3] Additionally, Plaintiffs note that "[s]ince AAR was forced to comply with competitive requirements" the higher-priced carriers, Plaintiffs' competitors, "have been virtually put out of business." (Mot. at 16:4-6.)

violation "was simply incidental to his personal and pecuniary interests in the matter").

Accordingly, Plaintiffs have not shown that their financial burden of private enforcement is such as to make the award appropriate. Since this issue is dispositive, the remaining issues raised by Defendants' Opposition need not be decided.

Also pending is Defendants' Motion to Strike allegedly new arguments raised for the first time in Plaintiffs' Reply. (Defs.' Mot. to Strike Pls.' Reply at 1:1-9.) Since Plaintiffs' motion is ruled on without reaching those arguments, Defendants' Motion to Strike is denied as moot.

SUMMARY

For the reasons stated, Plaintiffs' motion for attorneys' fees under California Code of Civil Procedure section 1021.5 is denied. (Dkt. No. 84.) Defendants' Motion to Strike is denied as moot. (Dkt. No. 91.)

IT IS SO ORDERED.

Dated: July 11, 2008

GARLAND E. BURRELL, JR.
United States District Judge